UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ROBERT L. ALLEN, JR., )
)
    Petitioner, )
)
v. ) No. 2:23-CV-00114-DCLC-CRW
)
UNITED STATES OF AMERICA, )
)
    Respondent. )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Robert L. Allen's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1], Mr. Allen's Memorandum of Law [Doc. 2], the United States's Response in Opposition [Doc. 9], Mr. Allen's Reply [Doc. 10], and United States Magistrate Judge Cynthia R. Wyrick's Report and Recommendation [Doc. 24]. For the reasons herein, the Court will deny Mr. Allen's motion.

**I. BACKGROUND**

In 2022, a grand jury charged Mr. Allen with multiple offenses under the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., as well as firearms offenses. [Second Superseding Indictment, Doc. 72, at 1–4, No. 2:22-CR-00017-1-DCLC-CRW]. Mr. Allen, who has a lengthy criminal history with multiple prior convictions, entered into a plea agreement with the United States under Federal Rule of Criminal Procedure 11(c)(1)(C),[1] and he pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [Plea Agreement, Doc.

---

[1] Rule 11(c)(1)(C) allows the United States to "agree that a specific sentence or sentencing range is the appropriate disposition of the case," Fed. R. Crim. P. 11(c)(1)(C), but a plea agreement under Rule 11(c)(1)(C) requires the Court's approval, Fed. R. Crim. P. 11(c)(3)(A).

99, at 1, No. 2:22-CR-00017-1-DCLC-CRW]. The parties agreed that the appropriate sentence was 210 months' imprisonment. [*Id.* at 7].

In the plea agreement, and later at sentencing, Mr. Allen's prior convictions became a focal point under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). [PSR, Doc. 132, ¶¶ 38, 74, No. 2:22-CR-00017-1-DCLC-CRW]. Under the ACCA, a defendant convicted of being a felon in possession of a firearm will receive an enhanced sentence of at least fifteen years[2] if he is an armed career criminal—i.e., someone who committed at least three violent felonies "on occasions different from one another." 18 U.S.C. § 924(e)(1). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"); (2) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). *Id.* § 924(e)(2)(B).

In sum, the ACCA requires the Court to impose a fifteen-year mandatory minimum sentence for a defendant who violates 18 U.S.C. § 922(g)(1)—the very violation with which the grand jury charged Mr. Allen—if that defendant "has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony . . . *committed on occasions different from one another*." 18 U.S.C. § 924(e)(1) (emphasis added). This italicized language is known as the "occasions clause" of the ACCA.

---

[2] A convicted felon who possesses a firearm normally faces a maximum penalty of fifteen years' imprisonment, 18 U.S.C. § 924(a)(8), and three years' supervised release, *id.* §§ 3559(a)(3) and 3583(b)(2), but if that felon possesses the firearm after having incurred three prior convictions "for a violent felony or serious drug offense, or both," the ACCA requires a fifteen-year minimum sentence, *id.* § 924(e)(1), and increases the maximum supervised release term to five years, *id.* §§ 3559(a)(1) and 3583(b)(1).

With the ACCA in mind, the parties, in the plea agreement's factual basis, agreed that Mr. Allen has the following prior convictions:

i) Second Degree Murder, in Hamblen County, TN, in 2002, with an offense date of October 20, 2001, which occurred at approximately 8:20 p.m. at 1705 Calloway Circle, Morristown, TN, for which he received a 20-year term of imprisonment,[3]

ii) Aggravated Assault, in Hamblen County, TN, in 2002, with an offense date of October 20, 2001, which occurred at approximately 11:40 p.m., at 2215 Buffalo Trail, Morristown, TN, for which he received a 6-year term of imprisonment;

iii) Aggravated Robbery, in Hamblen County, TN, in 2002, with an offense date of October 20, 2001, which occurred at approximately 11:40 p.m., at 2215 Buffalo Trail, Morristown, TN, for which he received an 8-year term of imprisonment,

iv) Aggravated Burglary, in Washington County, TN, in 1998, with an offense date of March 19, 1997, for which he received a 3-year term of imprisonment; and

v) Theft Over $500, in Washington County, TN, in 1998, with an offense date of March 19, 1997, for which he received a 1-year sentence.

[Plea Agreement at 3]. The parties further agreed that the first, second, and third offenses—the offenses of second-degree murder, aggravated robbery, and aggravated assault—occurred on occasions different from one another:

> The defendant agrees and stipulates that, consistent with *Wooden v. United States*, 142 S. Ct. 1063 (2022), the offenses of Aggravated Assault and Aggravated Robbery, which occurred on October 20, 2001, at approximately 11:40 p.m. at 2215 Buffalo Trail, in Morristown, TN, and the Second Degree Murder, which also occurred on October 20, 2001, at approximately 8:20 p.m. at 1705 Calloway Circle, in Morristown, TN, are separate and distinct occasions of criminal conduct.

[Plea Agreement at 6–7]. The parties agreed that these three offenses occurred on occasions different from one another even though two of them—the offenses of aggravated assault and

---

[3] According to the Probation Office, Mr. Allen "went to [a] residence" and shot a woman "in the head, which resulted in her death." [PSR ¶ 70].

3

aggravated robbery—occurred, by the parties' own admission, at exactly the same address, on exactly the same date, and at exactly the same time.

At sentencing, the Court determined that Mr. Allen was an armed career criminal based on his previous convictions, *see* [*id.* ¶¶ 38, 74 (branding Mr. Allen as an armed career criminal under the ACCA); Statement of Reasons, Doc. 149, at 1, No. 2:22-CR-00017-1-DCLC-CRW (adopting the PSR without change)],[4] and it accepted the parties' plea agreement and sentenced him to 210 months' imprisonment, [J., Doc. 148, at 2, No. 2:22-CR-00017-1-DCLC-CRW]. That sentence approximately bisected his advisory guidelines range of 188 to 235 months—a range fueled by a criminal history category of VI and total offense level of 31. [Statement of Reasons at 1]. Although he did not appeal his conviction or sentence, he has filed a motion for post-conviction relief under 28 U.S.C. § 2255, alleging claims of ineffective assistance of counsel. First, he alleges that his attorney, Jerry J. Fabus, Jr., was constitutionally ineffective because he did not heed his instruction to file a notice of appeal after his sentencing hearing. [Pet'r's Mot. at 4]. Second, he alleges that Mr. Fabus was ineffective because he failed to raise the Supreme Court's decision in *Wooden v. United States*, 595 U.S. 360 (2022), as a challenge to his designation as an armed career criminal at sentencing. [Pet'r's Aff., Doc. 1-1, at 1–2]. In this same vein, he alleges that Mr. Fabus "knew, or should have known, that the *Wooden* decision was similar to [his] situation, and should not have advised [him] to stipulate in [his] Plea Agreement, that said decision was not applicable to [his] case." [*Id.* at 2].

After reviewing Mr. Allen's allegations, the Court found that he had pleaded sufficient facts to warrant an evidentiary hearing on his first claim, and it referred this claim—and only this claim—to United States Magistrate Judge Cynthia R. Wyrick for a hearing and report and

---

[4] Mr. Allen's attorney did not object to his designation as an armed career criminal. [Def.'s Notice of No Objs., Doc. 139].

recommendation. [Order, Doc. 14, at 1].[5] Magistrate Judge Wyrick concluded that Mr. Allen's claim is without merit. [R. & R. at 7–11]. In response to her report and recommendation, Mr. Allen filed one timely objection. Although he did not object to Magistrate Judge Wyrick's conclusion that his first claim lacks merit, he did object on the following grounds:

> This matter should be referred back to the Magistrate Judge to take evidence on the remaining ground for relief: Whether counsel rendered constitutionality deficient performance when he had Petitioner stipulate in the plea agreement that the *Wooden* decision would render three prior convictions available for an ACCA statutory penalty enhancement.

[Pet'r's Obj., Doc. 25, at 2]. The Court sustained Mr. Allen's objection and held an evidentiary hearing, at which both Mr. Fabus and Mr. Allen testified. Having carefully considered their testimonies and the parties' arguments, the Court is now prepared to rule on Mr. Allen's claim.

## II. Legal Standard

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). The legal standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for

---

[5] A district judge has license to refer part of a case, or limited issues, to a magistrate judge. *Cf. Holt-Orsted v. City of Dickson*, 641 F.3d 230, 234 (6th Cir. 2011).

an appeal.'" (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994))). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

"A prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). To obtain relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the [underlying] proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To obtain relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F.3d 503, 505–06 (6th Cir. 1996).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. To discharge this burden, a

6

petitioner must allege sufficient facts showing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

### III. ANALYSIS

Again, Mr. Allen claims that Mr. Fabus was ineffective for stipulating that his prior convictions occurred on occasions different from one another. [Pet'r's Obj. at 2]. The United States does not squarely contest Mr. Allen's claim on the merits. Instead, it casts his claim as "an entirely new ineffective-assistance claim" and invites the Court not to consider it. [United States's Resp., Doc. 26, at 3]; *see* [*id.* at 1–2 ("Petitioner asserted one—and only one—ineffective-assistance claim in his § 2255 motion and memorandum in support: 'The sole issue presented is whether counsel, Jerry J. Fabus, Esq., rendered constitutionally deficient performance when he failed to file a notice of appeal when requested by movant.'" (quoting Pet'r's Mem., Doc. 2, at 2)].

But in an affidavit that Mr. Allen filed contemporaneously with his motion, he states: "[C]ounsel rendered constitutionally deficient performance . . . when he had me stipulate in my Plea Agreement the *Wooden* decision would render three prior convictions available for an ACCA statutory penalty enhancement." [Pet'r's Aff. at 3]. Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), and the Federal Rules of Civil Procedure

7

apply to this post-conviction proceeding "to the extent that they are not inconsistent with any statutory provisions or other rules," Rule 12, Rules Governing Section 2255 Proceedings; *see Martinez v. United States*, 865 F.3d 842, 844 (6th Cir. 2017) ("[T]he overwhelming history of § 2255 indicates that motions filed under that section could be considered civil in nature." (quotation omitted)). And besides, if the Court were to exclude Mr. Allen's claim because it appears in an appended document and not within the four corners of his motion, it would act antithetically to the standard of leniency to which he is entitled as a pro se litigant. *See Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (stating that a pro se litigant's "pleadings are held to a less stringent standard than those prepared by an attorney" (citations omitted)).[6] In sum, the Court will consider Mr. Allen's claim.

### A. Ineffective Assistance of Counsel

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right is the right not merely to representation but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). When a petitioner contests his sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). *Strickland*'s two-pronged test applies to an attorney's actions in the guilty-plea context. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

---

[6] The United States's failure to address Mr. Allen's claim on the merits does not entitle Mr. Allen to a walkover, and the Court will hold Mr. Allen to his burden as the movant under § 2255. *See United States v. Bawgus*, 782 F. App'x 408, 409–10 (6th Cir. 2019) ("[The petitioner] alternatively argues that the government's failure to respond to a district court order [requiring a response] . . . bars it from challenging his § 2255 relief. But whether the government appropriately responded to that order does not discharge [the petitioner's] burden to prove entitlement to habeas relief." (citations omitted)); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970) ("The failure of State officials to file a timely return does not relieve the prisoner of his burden of proof. Default judgments in habeas corpus proceedings are not available as a procedure to empty State prisons[.]" (citations omitted)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted). Indeed, "[c]ounsel's performance is strongly presumed to be effective." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quotation omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (citation omitted)). Even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Strickland*, 466 U.S. at 691 (citation omitted).

1. Deficient Performance

To establish deficient performance, Mr. Allen must show that Mr. Fabus, through the prism of an objective standard of reasonableness, "made errors so serious that [he] was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. In determining whether Mr. Fabus committed errors so grave that his representation was not commensurate with the Sixth Amendment's guarantee of effective assistance of counsel, the Court considers "all the circumstances" by "reconstruct[ing] the circumstances of [his] challenged conduct" and "evaluat[ing] the conduct from [his] perspective at the time." *Id.* at 689. At the time of

9

Mr. Allen's guilty plea, *Wooden* was binding precedent, so the Court, in reconstructing the circumstances surrounding Mr. Allen's case, begins with an exploration of *Wooden*.

In *Wooden*, the issue was whether the defendant qualified as an armed career offender under the ACCA. More specifically, the Supreme Court addressed whether the defendant—who had burgled ten separate storage units inside one building on a single night—had committed his crimes on the same occasion or on ten separate occasions. *Wooden*, 595 S. Ct. at 366. The Supreme Court held that the defendant did not qualify as an armed career offender because he committed his crimes on the same occasion and not on ten separate occasions. *Id.* In reaching this holding, the Supreme Court reasoned that the defendant's crimes took place on the same night, in the same building, and as part of the same scheme; indeed, he had burgled the ten storage units in the same facility, one after another, by "'crushing the interior drywall' between them." *Id.* at 362, 366–71. So unlike offenses that might have occurred "a day or more apart" or "at a 'significant distance,'" the defendant's offenses occurred on one occasion. *Id.* at 1071.[7]

Relying on *Wooden*, Mr. Allen contends that Mr. Fabus ought to have known that he "should not have been determined to be a career offender" under the ACCA, "because [his] prior convictions that were relied upon were committed on the same date, at approximately the same time, at the same location." [Pet'r's Aff. at 2]. Mr. Allen's contention has at least a modicum of truth to it. By the plea agreement's plain terms—to which both parties, of course, agreed to be legally bound, *see United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991) ("Plea agreements are contractual in nature.")—two of the three predicate offenses occurred at exactly the same location, on exactly the same date, and at exactly the same time, *see* [Plea

---

[7] An "occasion" is a single event, occurrence, happening, or episode, and when deciding whether offenses occurred on occasions different from one another, the Court considers the timing, location, character, and relationship of the offenses, including whether they occurred on different days, at different locations, or at significant distances from one another. *Wooden*, 595 U.S. at 375–76.

10

Agreement at 6 ("[T]he offenses of Aggravated Assault and Aggravated Robbery . . . occurred on October 20, 2001, at approximately 11:40 p.m. at 2215 Buffalo Trail, in Morristown, TN[.]")]. And yet, Mr. Fabus counseled Mr. Allen to agree that these two offenses were "separate and distinct occasions of criminal conduct." [*Id.* at 7]. At the time, the Supreme Court had yet to decide *Erlinger v. United States*, 602 U.S. 821 (2024), in which it held that the occasions-different inquiry under the occasions clause is for a jury and not a court to decide, *id.* at 835, so under then-existing precedent, Mr. Fabus could have asked the Court at sentencing to conduct the occasions-different inquiry, *see United States v. Williams*, 39 F.4th 342, 351 (6th Cir. 2022) ("[A] sentencing judge may answer the question of whether prior offenses were 'committed on occasions different from one another.'" (quotation omitted)), *abrogated by United States v. Erlinger*, 602 U.S. 821 (2024).[8]

But a proceeding under § 2255 is subject to principles of finality and does "not . . . do service for an appeal," *Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)), so the issue is not so much whether Mr. Allen's claim under *Wooden* has merit but whether Mr. Fabus's performance, in the exact context of the plea negotiations, is deficient under the Sixth Amendment. When the Court contemplates why Mr. Fabus would have advised Mr. Allen to agree that his offenses of aggravated assault and aggravated robbery occurred on different occasions despite the parties' admission that they occurred at precisely the same location, on precisely the same date, and at precisely the same

---

[8] In *Erlinger*, the Supreme Court held that the Fifth and Sixth Amendments required the occasions-different analysis be submitted to a jury. Because Allen had agreed that he was an armed career criminal, whether his prior convictions occurred on occasions different from one another was not submitted to a jury. To the extent Mr. Allen claims Mr. Fabus was ineffective because he *should have* at least submitted that issue to the jury is also without merit. Mr. Allen is not entitled to relief here because *Erlinger* is not retroactive on collateral review. *Bonds v. United States*, No. 1:17-CR-108, 2025 WL 2166431, at *4 (E.D. Tenn. July 30, 2025) (collecting cases). Mr. Allen's conviction and sentence were final in this case on May 5, 2023, fourteen days after entry of judgment. *Erlinger* was decided by the Supreme Court on June 21, 2024.

11

time, the Court is admittedly perplexed. Without running crosswise with *Wooden*, the parties could have just as easily agreed that Mr. Allen's offenses of second-degree murder, aggravated assault, and aggravated burglary—all of which occurred at different locations and at different times, according to the plea agreement—satisfied the ACCA's occasions clause.

Even so, the Court cannot go so far as to conclude that Mr. Fabus was ineffective. The fact that he counseled Mr. Allen to agree that his offenses of aggravated assault and aggravated robbery occurred on different occasions is not in and of itself deficient performance. In a plea agreement, a defendant can sign away any right, even a constitutional one, *see Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) ("It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement."), so long as he enters into the plea agreement knowingly and voluntarily, *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001). Mr. Allen does not allege that he entered into his plea agreement unknowingly or involuntarily. During his evidentiary hearing, he claimed—for the first time— to have learned after signing his plea agreement that Mr. Fabus had wrongly stipulated under *Wooden* that his offenses of aggravated assault and aggravated robbery occurred on different occasions. [Hr'g Tr. at 54:23–25; 55:1–7 (on file with the Court)].

Mr. Allen's sworn statements during his change-of-plea hearing tell a different story. Under oath, he avowed to the Court that his plea agreement's factual basis—which contained the stipulation at issue—was accurate, error-free, and adequate in every respect; that Mr. Fabus had fully explained all the terms and conditions of his plea agreement to him; and that he fully understood all those terms and conditions. In short, Mr. Allen did not inform the Court of any misgivings about his stipulation under *Wooden* at the time, and the Court found his plea to be knowing and voluntary.

His "[s]olemn declarations in open court carry a strong presumption of verity," and his declarations, as well as the Court's findings, "constitute a formidable barrier in any subsequent collateral proceeding." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), *see Marks v. Davis*, 504 F. App'x 383, 386 (6th Cir. 2012) ("[T]he plea transcript itself carries great weight." (citing *id.*)); *see also Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [for a plea colloquy], 'the defendant is bound by his statements in response to that court's inquiry.'" (quotation omitted)). In fact, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

So when a petitioner like Mr. Allen later attempts to double back on sworn statements that he made in open court, he generally cannot succeed on a claim of ineffective assistance. *See United States v. Vargas-Gutierrez*, 464 F. App'x 492, 496 (6th Cir. 2012) ("A motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." (quoting *United States v. Shah*, 453 F.3d 520, 523 (D.C. Cir. 2006))); *see also Winans v. United States*, No. 17-1535, 2017 WL 8315838, at *3 (6th Cir. Oct. 20, 2017) ("This ineffective-assistance claim . . . is foreclosed by [petitioner's] knowing and voluntary guilty plea[.]"); *Brittian v. United States*, No. 1:08–cv–169, 2011 WL 1768864, at *9 (E.D. Tenn. May 9, 2011) ("[The petitioner's] plea was knowing and voluntary and his ineffective assistance of counsel claim regarding his plea fails."); *Cordell v. United States*, Nos. 4:05-cv-47, 4:00-cr-13-01, 2008 WL 4568076, at *9 (E.D. Tenn. Oct. 14, 2008) ("[T]he ineffective assistance of counsel claim fails because [petitioner's plea was] knowing and voluntary[.]"); *see also Villa-Rodriguez v. United States*, No. 2:15-cv-02690, 2016 WL 6277861, at *4, 6 (S.D. Ohio Oct. 27, 2016)

13

("Petitioner asserts that his trial attorney performed in a constitutionally ineffective manner," but "Petitioner will not now be heard to deny the facts to which he once agreed under oath."); *Dallas v. United States*, Civ. No. 12-15495, Crim. No. 10-20488, 2013 WL 3448249, at *4 (E.D. Mich. July 9, 2013) ("Petitioner's ineffective assistance claim must fail because his attorney's assistance regarding his plea . . . is not objectively unreasonable given the evidentiary basis for his guilty plea."); *Harrison v. Bauman*, No. 2:10–cv–188, 2012 WL 3206044, at *2 (W.D. Mich. Aug. 7, 2012) ("The Sixth Amendment claim of ineffective assistance of counsel is properly denied. [The petitioner] entered a knowing and voluntary plea of guilty[.]").

In sum, Mr. Allen knowingly and voluntarily entered into the plea agreement despite whatever misgivings he might have had at the time about his stipulation under *Wooden*—and he does not allege or argue otherwise. His knowing and voluntary guilty plea forecloses his claim of ineffective assistance of counsel.

    2. <u>Prejudice</u>

To establish prejudice, Mr. Allen must demonstrate that his attorney's alleged deficient performance was so serious that it deprived him of his fundamental right to due process of law, *Strickland*, 466 U.S. at 687, or in other words, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. In the guilty-plea context, specifically, Mr. Allen must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "The test is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla*, 559 U.S. at 372).

14

Mr. Allen cannot show prejudice. For starters, he does not allege that he would have foregone his guilty plea and opted for trial if not for Mr. Fabus's alleged ineffective assistance, but even if he had made this allegation, he would fall well short of convincing the Court that a rejection of the plea agreement would have been rational under the circumstances. A showing that a decision to reject a plea agreement would have been rational "requires a 'prediction of the likely outcome at trial.'" *Haddad v. United States*, 486 F. App'x 517, 521 (6th Cir. 2012) (quoting *Dando v. Yukins*, 461 F.3d 791, 798 (6th Cir. 2006)). Mr. Allen's chances of success at trial on the occasions-different inquiry would have been improbable at best.

Although Mr. Allen's previous offenses of aggravated assault and aggravated robbery occurred—by agreement of the parties—at the same location, on the same date, and at the same time, the evidence at trial would have nonetheless sufficed, and unquestionably so, to result in his conviction under the ACCA's occasions clause. Even without one of the convictions for aggravated assault or aggravated robbery, he still would have had three predicate offenses that, by every appearance, occurred at different places and at different times, and they would have therefore satisfied the occasions clause:

**OPTION ONE**

| Offense | Location | Date |
|---|---|---|
| Second Degree Murder | 1705 Calloway Circle, Hamblen County, Tennessee | October 20, 2001, at approximately 8:20 p.m. |
| Aggravated Assault | 2215 Buffalo Trail, Hamblen County, Tennessee | October 20, 2001, at approximately 11:40 p.m. |
| Aggravated Burglary[9] | Washington County, Tennessee | March 19, 1997 |

---

[9] Following Mr. Allen's guilty plea, the United States Probation Office prepared a presentence investigation report and identified these same three offense as predicate offenses under the ACCA. [PSR ¶¶ 60, 70, 72]. Mr. Allen neither challenges the Probation Office's determination that these offenses are predicate offenses under the ACCA nor the Court's determination that he qualified as an armed career criminal based on these predicate offenses.

15

Case 2:22-cr-00017-DCLC-CRW   Document 186   Filed 08/05/25   Page 15 of 17
PageID #: 1894

**OPTION TWO**

| Offense | Location | Date |
|---|---|---|
| Second Degree Murder | 1705 Calloway Circle, Hamblen County, Tennessee | October 20, 2001, at approximately 8:20 p.m. |
| Aggravated Robbery | 2215 Buffalo Trail, Hamblen County, Tennessee | October 20, 2001, at approximately 11:40 p.m. |
| Aggravated Burglary[10] | Washington County, Tennessee | March 19, 1997 |

Mr. Allen therefore had no rational defense under the ACCA's occasions clause, and the Court, therefore, cannot countenance an argument—had Mr. Allen offered one—that his rejection of the plea agreement and all its attendant benefits, which Mr. Fabus deftly summarized during the evidentiary hearing, [Hr'g Tr. at 12:11–25; 13:1–15; 14:1–3; 43:15–25; 44:1–25; 45:1–2], would have been rational under the circumstances. Mr. Allen therefore fails to show prejudice under *Strickland*'s second prong, in addition to failing to show deficient performance, and he is not entitled to the extraordinary remedy of § 2255 relief.

### B. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability, which is necessary for Mr. Allen to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claims on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack*

---

[10] Following Mr. Allen's guilty plea, the United States Probation Office prepared a presentence investigation report and identified these same three offense as predicate offenses under the ACCA. [PSR ¶¶ 60, 71, 72]. Mr. Allen neither challenges the Probation Office's determination that these offenses are predicate offenses under the ACCA nor the Court's determination that he qualified as an armed career criminal based on these predicate offenses.

16

*v. McDaniel*, 529 U.S. 473, 484 (2000). Having addressed the merits of Mr. Mr. Allen's claims, the Court does not conclude that reasonable jurists would find that its rejection of his claims is debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Mr. Allen.

## IV. CONCLUSION

As the petitioner under § 2255, Mr. Allen fails to meet his burden of establishing that his conviction and sentence are in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. The Court therefore **ORDERS** as follows:

1. Having carefully reviewed the record, the Court agrees with Magistrate Judge Wyrick's report and recommendation [Doc. 24], and the Court **ACCEPTS IN WHOLE** the report and recommendation under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b);

2. Mr. Allen's Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1] is **DENIED**; and

3. This case is hereby **DISMISSED with prejudice**.

The Court will enter a judgment consistent with this opinion.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge